USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/14

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - -X
KUEHNE & NAGEL INC.,

              Plaintiff,

    - against -

A.G.R. ESHCOL OVERSEAS, LTD.,
d/b/a A.G.R. ESHCOL OVERSEAS (1993) LTD.

              Defendant.
- - - - - - - - - - - - - - - - - - - -X

13 Civ. 8919 (LLS)

OPINION & ORDER

Plaintiff Kuehne & Nagel ("KN") brings this declaratory judgment action against its subcontractor A.G.R. Eshcol Overseas, Ltd. ("AGR") for breach of contract, indemnity, fraud and declaratory relief, alleging that AGR fraudulently overbilled KN for the air transportation of United States military equipment from Afghanistan to Jordan and the United Arab Emirates.

AGR moves to dismiss the complaint on the ground of forum non conveniens, arguing that the alleged fraud did not occur in New York, no witnesses with personal knowledge of the fraud are located here and Israel is an adequate alternative forum for the resolution of KN's claims.  KN moves to strike two of AGR's affirmations and portions of AGR's reply memorandum, contending that AGR has improperly sought to supplement the record.

For the reasons that follow, the complaint is dismissed on the ground of forum non conveniens, because the alleged

- 1 -

fraudulent overbilling occurred in Israel, the key witnesses are located in the Middle East, and Israel furnishes not only an adequate but a superior forum for this dispute.

## BACKGROUND

This recital is based on KN's Complaint dated December 16, 2013, as well as the parties' submissions in support of their respective arguments concerning forum non conveniens.[1]

### KN's Complaint

KN is a New York corporation with its principal place of business in Jersey City, New Jersey. Compl. ¶ 1. AGR is an Israeli corporation with its sole place of business in Israel. Id. ¶ 2; Ben Horin Affirmation, Jan. 20, 2014, ¶ 1. This Court has diversity jurisdiction.

KN is a "logistics provider" that "facilitates the transportation of cargo for its customers through the use of third-party vendors, such as carriers, transportation intermediaries, cargo handlers, customs brokers and warehousemen." Compl. ¶ 9.

In March 2012, American President Lines ("APL") retained KN "to provide air logistics services of cargo into and out of

---

[1] It has long been the law of the Second Circuit that "in the determination of a motion to dismiss for forum non conveniens, the court may consider affidavits submitted by the moving and opposing parties." Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 645 (2d Cir. 1956).

- 2 -

Afghanistan and Dubai to and from the United States." Id. ¶¶
10-11.

KN engaged AGR as its subcontractor "to provide day-to-day
operations in the Middle East under this contract," and AGR
utilized its own subcontractor DFS (Middle East) "to provide on-
ground support, including the weighing of the cargo, and actual
air transportation." Id. ¶ 13.

DFS submitted invoices for its services to AGR, who
submitted its invoices to KN, who then submitted billing
packages to APL for payment. Id. ¶¶ 16-18. Between February
and May 2013, KN submitted fifty billing packages to APL based
on AGR's documentation of 377 shipments. Id. ¶ 19. KN alleges
that the billing packages included air waybills issued on behalf
of DFS by AGR's New York affiliate, AGR USA Corp. ("AGR US"),
certified weight scale tickets prepared by DNATA (the Dubai
airport cargo handling agency) showing the net weight of the
cargo, and cargo manifests prepared by DFS showing the weight
and particulars of the cargo transported. Id. ¶ 20-22.

In May 2013, APL advised KN "of potential discrepancies on
DNATA weight tickets for orders of services executed by AGR."
Id. ¶ 24. After performing an audit, KN concluded that AGR had
fabricated the DNATA weight tickets and cargo manifests,
inflated the weights of its shipments on the air waybills and
invoices, and overbilled KN on all invoices. Id. ¶¶ 25-32.

- 3 -

### Gil Ben Horin Affirmations

Gil Ben Horin is a resident and citizen of Israel and the President of AGR, an Israeli corporation with its sole office in Tel Aviv, Israel. Ben Horin Affirmation, Jan. 30, 2014, ¶ 1.

Ben Horin states that in mid-2012, he met with KN manager John Hextall at KN's Jersey City, New Jersey office, where they discussed AGR's air charter business. Id. ¶ 4. Following that meeting, a KN representative visited Ben Horin at AGR's office in Israel to discuss a potential project to transport U.S. military equipment from Afghanistan through Dubai and Jordan. Id. ¶ 5.

At the request of Raghu Ramachandan of KN, Ben Horin then attended a meeting at KN's Washington, D.C. office about the Afghanistan project. Id. ¶ 7. Ramachandan asked Ben Horin "to provide rates for certain non-charter services different from the full flight charter services AGR generally provides." Id. ¶ 9. Ben Horin suggested that BMP LTD. ("BMP"), an Israeli company that AGR had previously used as a subcontractor, could provide those services. Id. The owner of BMP, Barak Pilarski, was based in Aqaba, Jordan, id. ¶ 8, but now resides in Israel. Ben Horin Reply Aff. ¶ 9.

Ben Horin states that "KN understood that BMP would be acting as a subcontractor of AGR" and "all of KN's communications, quotations, updates and follow up related to the

performance of this project were with Mr. Barak."   Ben Horin

Aff. ¶ 10.   As alleged in KN's complaint, BMP used DFS (Middle

East) for "on-ground support."   Id. ¶ 11.

    Ben Horin affirms:

    12. The flights which AGR arranged were only for the
    removal of equipment from Afghanistan to Dubai or to
    Jordan, and none of those flights were to the U.S.

    13. As I subsequently learned, it appears that as a result
    of collusion among individuals in Israel, Dubai and
    Afghanistan, and without the knowledge of anyone employed
    by AGR, the weight of the cargo actually shipped by DFS
    (Middle East) was overstated.

    14. I also subsequently learned that, without the knowledge
    or approval of AGR, those involved in this conduct used air
    waybills that had been printed up under the name of AGR
    U.S., a non-operating company that never did any business,
    and had no involvement whatsoever [sic] any of these
    transactions.   Mr. Barak told me that he used AGR US
    waybills at KN's request in order to avoid disclosure of
    the involvement of an Israeli company, as entities
    operating in Dubai could get in trouble with the
    authorities there for doing so.

    15. Other than one meeting in Washington, DC, which was
    held there at KN's request, to the best of my knowledge no
    one from AGR had any contact with the U.S. with respect to
    any of the matters alleged in KN's complaint.

Id. ¶¶ 12-15.

    Ben Horin also affirms in his March 10, 2014 reply

affirmation:

    7. The alleged overbilling by AGR resulting from
    overstatement of the weight of the cargo shipped from
    Afghanistan to Jordan and Dubai is the essential element of
    KN's claims.   All of the potential witnesses with personal
    knowledge of that subject are located in Israel, where AGR
    is located, in Jordan, or in Dubai.   None of those
    witnesses are located in the United States.

- 5 -

8. In its memorandum, at page 7, KN has listed six people from the Washington, D.C. area, who apparently had some general involvement with the overall project.  However, KN does not, and could not, suggest that any of those individuals have any personal knowledge of the alleged overbilling.  That conduct certainly did not occur in the U.S.

9. Exhibit A to Mr. Ramachandran's affirmation contains a series of emails.  None of the people listed on those emails were ever AGR employees.  Barak Pilarski, a crucial non-party witness in this case, resides in Israel.  Barak's son, Dean Pilarski, and Ilan Mimun, a free-lance worker, were both brought on by Barak to work on this project, are also potentially important non-party witnesses who reside in Israel.

### Raghu Ramachandan Affidavit

Raghu Ramachandan, Program Manager at KN, was the primary point of contact between AGR and KN.  Ramachandan Affidavit, sworn to Feb. 14, 2014, ¶ 4.

He states that between 2012 and 2013, AGR and KN had three meetings in Washington, D.C. and one in New York City concerning the Afghanistan project.  Id. ¶ 3.

Ramachandan was never advised that Mr. Pilarski, who has an AGR email address and whose email signature identifies him with AGR's physical address and phone number, was not an employee or principal of AGR.  Id. ¶ 4.  He states, "Additionally, until my review of Mr. Ben Horin's declaration, I had never even heard of an entity called BMP LTD and was unaware of its involvement (if any) in the subject transaction."  Id. ¶ 5.

Ramachandan declares:

- 6 -

7. The subject air waybills were provided by AGR to K+N and were copied not only to Mr. Pilarski, but also to other individuals at AGR; accordingly they were fully aware of utilization of AGR USA as issuing carrier on the air waybill (See Composite Exhibit B).

8. Any assertion that K+N directed AGR to specifically utilize AGR USA Corp in order to disguise the fact that an Israeli entity may have been involved in shipments in the Middle East region is without support or basis.  K+N had on prior dealings involving U.S. military cargo conducted similar transactions utilizing air waybills identifying AGR without incident; thus K+N would have no reason to make such request.  In any event, no such request was made by K+N.

8.[sic] Additionally, AGR provided to APL, copying K+N other transport documentation ("Flight Briefing") further identifying AGR USA Corp with respect to the flights that are the subject of the instant litigation.  (See Exhibit "C").

8.[sic] Additionally, a review of the New York Department of State Division of Corporations website reveals that dissolution did not occur until October 28, 2013.  (See Exhibit D).

9. Further, a general internet search on the corporate data of said entity shows an annual sales volume of $190,000.00 indicating that in fact the entity did conduct business contrary to the averments contained in the Ben Horin affidavit.  (See Exhibits E)

10. K+N would typically receive payment for the services rendered under the subject transactions via wire transfer in New York at HSBC Bank USA, N.A.

## DISCUSSION

### A. Motion to Strike

KN moves to strike the affirmation of Avi Cordova, an

Israeli attorney, the reply affirmation of Gil Ben Horin and the

portions of AGR's reply memorandum which discuss those

affirmations, arguing that AGR's original motion was deficient
and AGR cannot seek to admit Cordova's affirmation at the reply
stage to show that an Israeli court would adjudicate the
complaint's causes of action or Ben Horin's reply affirmation to
identify particular witnesses or documents demonstrating why
Israel would be a more convenient forum.

AGR contends that the materials KN seeks to strike properly
respond to KN's arguments in its opposition papers.

Since the motion to strike affects the evidence considered
in the forum non conveniens analysis, it is addressed at the
outset.

"Arguments may not be made for the first time in a reply
brief." Knipe v. Skinner, 999 F.2d 708, 711 (2d Cir. 1993).
However, "reply papers may properly address new material issues
raised in the opposition papers so as to avoid giving unfair
advantage to the answering party." Litton Indus. v. Lehman
Bros. Kuhn Loeb Inc., 767 F. Supp. 1220, 1235, rev'd on other
grounds, 967 F.2d 742 (2d Cir. 1992).

KN argues in its opposition that it is unknown whether
Israeli courts would recognize causes of action for declaratory
relief or enforcement of an oral contract because AGR has not
presented any affidavits or declarations of an expert on foreign
law. P. Opp. at 5. Cordova addresses KN's arguments by

- 8 -

confirming that an Israeli court would recognize those claims. Cordova Aff. ¶¶ 7-8.

KN also contends in its opposition that AGR "wholly fails to address what witnesses or proof would even be germane to the issues at hand." P. Opp. at 7. Ben Horin directly responds to this argument by stating that the witnesses familiar with the alleged overbilling are located in Israel, Dubai or Jordan. Ben Horin Reply Aff. ¶ 7.

AGR's submission of Cordova and Ben Horin's affirmations and its discussion of those affirmations in its reply brief properly address KN's opposition arguments regarding the adequacy of Israel as an alternative forum and the location of witnesses with relevant testimony.

The motion to strike is denied.

### B. Motion to Dismiss for **Forum Non Conveniens**

AGR argues that this action should be dismissed for forum non conveniens because Israel is an adequate alternative forum for the resolution of KN's claims, since any alleged fraudulent overbilling occurred primarily, if not exclusively, in Israel, where AGR's sole office and key non-party witnesses are located.

KN contends that it is unclear whether Israel is an adequate alternative forum, there are witnesses with relevant testimony located in New York and in Washington, D.C. and the

United States' local interest in this case exceeds that of Israel.

### 1. **Forum Non Conveniens Dismissal Standard**

The forum non conveniens analysis "starts with 'a strong presumption in favor of the plaintiff's choice of forum.'" Norex Petroleum Ltd. v. Access Indus., Inc. 416 F.3d 146, 154 (2d Cir. 2005), quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 265-66 (1981).

The exercise of discretion whether to dismiss a case on the ground of forum non conveniens involves a three-step analysis:

> At step one, a court determines the degree of deference properly accorded the plaintiff's choice of forum. At step two, it considers whether the alternative forum proposed by the defendants is adequate to adjudicate the parties' dispute. Finally, at step three, a court balances the private and public interests implicated in the choice of forum.

Norex, 416 F.3d at 153, citing Iragorri v. United Techs. Corp., 274 F.3d 65, 73-74 (2d Cir. 2001) (en banc).

### 2. **Application of Forum Non Conveniens Principles**

#### A. Degree of Deference Due KN's Forum Choice

In the Second Circuit, "the degree of deference to be given to a plaintiff's choice of forum moves on a sliding scale depending on several relevant considerations." Iragorri, 274 F.3d at 71. Specifically, "the greater the plaintiff's or the lawsuit's bona fide connection to the United States and to the

- 10 -

forum of choice and the more it appears that considerations of
convenience favor the conduct of the lawsuit in the United
States, the more difficult it will be for the defendant to gain
dismissal for forum non conveniens." Id. at 72 (footnotes
omitted).

KN's United States citizenship and New York residence weigh
against dismissal. New York is more convenient than Israel for
a New York company. On the other hand, according to its
website, KN "has more than 1000 offices in over 100 countries,
with over 63,000 employees." Horin Aff. Ex. A at 1. "In the
Second Circuit, the deference due an American plaintiff is
diminished where plaintiff is a corporation doing business
abroad and can expect to litigate in foreign courts." Flex-N-
Gate Corp. v. Wegen, No. 08 Civ. 2502, 2008 WL 5448994, at *3
(S.D.N.Y. Dec. 29, 2008) (quotation marks and citations
omitted). While KN is a New York corporation, it has offices
around the world, including locations in Israel, Jordan and
Dubai, and can expect to litigate abroad.

Further, "deference to a plaintiff's choice is diminished
where the core operative facts upon which the litigation is
brought bear little connection to the chosen forum." In re
Alcon Shareholder Litig., 719 F. Supp. 2d 263, 269 (S.D.N.Y.
2010) (citations omitted). The operative facts underlying KN's
claims occurred in the Middle East. All of the flights KN

arranged were from Afghanistan to Dubai or Jordan, Ben Horin
Aff. ¶ 12, and the potential witnesses with personal knowledge
of the alleged fraudulent overbilling are located in Israel,
Jordan or Dubai.  Ben Horin Reply Aff. ¶ 7.

The only alleged connections that this case has to New York
are: (1) AGR and KN held one meeting here; (2) AGR's affiliate
company AGR US was a New York corporation; and (3) KN received
payment for its services through a New York bank account.  Ben
Horin attests that AGR US never conducted any business and
Pilarski used AGR US air waybills at KN's request without AGR's
knowledge or approval.[2]  Ben Horin Aff. ¶ 14.  The location of
the KN bank account where it received payment from APL for its
services is insignificant.

Because of the lack of sufficient connections between this
action and this district, KN's choice of New York as a forum is
entitled to minimal deference.

## B. Adequacy of the Alternative Forum

"An alternative forum is adequate if the defendants are
amenable to service of process there, and if it permits
litigation of the subject matter of the dispute."  Pollux

---

[2] Even if AGR US was an operating corporation, the use of AGR US
waybills is non-essential to the commission of the fraud, and
does not establish a U.S. locus of the wrongdoing that led to
this litigation.

- 12 -

Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 75 (2d Cir. 2003) (citations omitted).

AGR, an Israeli company, is readily subject to suit in Israel.  KN contends that it is unknown whether an Israeli court would recognize causes of action for declaratory relief or enforcement of an oral contract.  P. Opp. at 5.

Cordova's affirmation confirms that an Israeli court would adjudicate all of KN's claims, including those for declaratory relief and enforcement of an oral contract.  Cordova Aff. ¶¶ 7-8.  If the court grants substantive relief, declaratory relief may be unimportant.

Further, numerous courts in this district have recognized that Israel is an adequate alternative forum for fraud and breach of contract claims.  See, e.g., Wilson v. ImageSat Intern. N.V., No. 08 Civ. 6716, 2008 WL 2851511, at *6 (S.D.N.Y. July 22, 2008), aff'd, 349 F. App'x 649 (2d Cir. 2009); Sussman v. Bank of Israel, 801 F. Supp. 1068, 1078 (S.D.N.Y. 1992), aff'd, 990 F.2d 71 (2d Cir. 1993); Diatronics, Inc. v. Elbit Computers, Ltd., 649 F. Supp. 122, 128 (S.D.N.Y. 1986), aff'd, 812 F.2d 712 (2d Cir. 1987).

Israel provides an adequate alternative forum.

### C. Balancing of the Public and Private Interests

#### i. Private Interest Factors

The private interest factors support an Israeli forum because AGR and Ben Horin are in Israel, as are key non-party witnesses with personal knowledge of the alleged overbilling.

As previously discussed, Ben Horin states that any potential witnesses with personal knowledge of the alleged overbilling are located in Israel, Dubai and Jordan, and he has specifically identified three non-party witnesses who reside in Israel - Pilarski, his son Dean, and Ilan Mimun.  Ben Horin Reply Aff. ¶ 9.

The only witnesses KN identifies are seven corporations in New York that it contends can offer testimony to establish that AGR US was a functioning corporation and six individuals in the Washington, D.C. area that are affiliated with KN, APL or DFS. P. Opp. at 7-8.  However, KN does not allege that any of those witnesses have personal knowledge of the alleged fraud.

#### ii. Public Interest Factors

Finally, the relevant public interest factors weigh heavily in favor of dismissal.

An Israeli court would indisputably be more familiar with Israeli commercial law.

Israel has an interest in deciding KN's claims because this case concerns an Israeli company and the alleged misconduct of

- 14 -

persons in Israel.  New York has less interest in fraudulent activity that occurred overseas, and the fact that a few meetings took place in the United States does not make the dispute one of interest to New York or the United States.

Thus, Israel's local interest exceeds that of the United States, and, "With small local interest in the dispute, it would be burdensome for a New York jury to hear and decide this case." Pollux Holding Ltd. v. Chase Manhattan Bank, 329 F.3d 64, 76 (2d Cir. 2003).

KN contends that the United States has an interest in ensuring that its government is not subject to overbilling, citing this Court's decision in U.S. ex rel. Thistlethwaite v. Dowty Woodville Poly-mer Ltd., 976 F. Supp. 207 (S.D.N.Y. 1997). In Dowty Woodville, the United States government intervened in a qui tam action, which involved "claims of substantial fraud committed against the government of this country."  Id. at 214. Here, the government was not charged for any of the allegedly overbilled amounts, nor is there any indication that the government has any economic interest in this action.  Ben Horin Reply Aff. ¶ 2.

All three steps of forum non conveniens analysis strongly favor an Israeli forum.  Accordingly, the motion to dismiss is granted.

- 15 -

## CONCLUSION

AGR's motion to dismiss (Dkt. No. 7) is granted on the ground of forum non conveniens, and KN's motion to strike (Dkt. No. 14) is denied.

The clerk is directed to enter judgment accordingly.

So ordered.


Dated:  New York, New York
        August 14, 2014

_Louis L. Stanton_

LOUIS L. STANTON
U.S.D.J.